You'll hear argument next in Case 17-21, Lozman v. The City of Riviera Beach. Ms. Karlin. Thank you, Mr. Chief Justice, and may it please the Court. The government violates the First Amendment whenever it retaliates against someone because they criticize public policies or public officials, and this is so even when the retaliation takes the form of an arrest for which there's probable cause. Section 1983, by its terms, provides an action at law, that is, a damages action, any time someone is deprived of a right secured by the Constitution, and that statute should apply here. This Court should not adopt a construction of Section 1983 that essentially lets defendants escape liability for First Amendment violations by claiming that they didn't violate the Fourth Amendment as well. Our case shows why an absolute bar rule is an unacceptable reading of Section 1983 and of the First Amendment. The case involved core First Amendment activity, a lawsuit protected by the Petitions Clause, and a series of criticisms of public officials and public law. Ginsburg. That was true of Hartman, too, but the Court made a distinction. The distinction in Hartman, as I understand it, Justice Ginsburg, comes and rests entirely on the fact that there was absolute prosecutorial immunity for the actor who actually imposed the injury there. And I see three major distinctions between Hartman and what's going on in this case. The first of those is that in Hartman there was absolute prosecutorial immunity, and what that meant is you could not sue the prosecutor, you had to sue somebody upstream. But the reason why there's absolute prosecutorial immunity, as this Court explained in the decisions it cited in Hartman, in Reno and in Waite, is because the Court wants to avoid inquiry into prosecutorial decision-making. And that's so because prosecutors are both independent and deliberative. Absolutely none of those factors is present in this case. You needn't look at anything a prosecutor has done. The decisions here were not made by independent actors. They were made by a police officer and by a city council member whose level of animus on the record shows that this was not an arrest about anything that occurred in the council chamber that day. And there was no ---- Kennedy, your beginning, I couldn't quite recall your beginning sentence, but it was hugely broad. Any time there's an arrest for First Amendment-protected speech, there's a violation of the Constitution, something to that effect. It seems to me that one of the difficulties of this case is that there are any number of hypotheticals you have. You have people that are fighting in the bar and the policeman has to get some order and the one of the more difficult suspects says something bad to the policeman, he arrests him. Under your view, that's a violation. No. That seems to me, I'm very concerned about police officers in difficult situations where they have to make quick, and your initial formulation just did not cover, just did not give any protection for that. In this case, there's a very serious contention that people in elected office deliberately wanted to intimidate this person, and it seems to me that maybe in this case we should cordon off or box off what happened here from the ordinary conduct of police officers. And your initial formulation was so blanket that it didn't provide for that. I think maybe I didn't state it clearly enough. Our position is that when an officer retaliates against someone for his protected speech, that is when he has what this Court called in Hartman retaliatory animus and can't show because of the Mount Healthy standard that he would have arrested the person anyway, then there is a First Amendment violation. And if I could point to the empirical evidence here, the city cites six cases. The State of Alaska on page 17 of its brief cites 27 cases in the Ninth Circuit. I have read all of those cases, and not a single one of those cases involves the kind of hypothetical that you're talking about. Breyer, that may be, but that's exactly what I had as my question, too, that it's not that you start, you're down two tracks, it seemed to me. If you say the police officer is liable, if he really has animus, and the probable cause was not, you know, going to affect him, once you say that, you're into the hypothetical of the bar. And all you've done is say the jury will decide all those questions. You get to the jury, and the jury has a factual question. That's true of the bar case. That's true of a real riot, where people are out insulting the police and they're breaking windows and burning cars. And every one of those cases goes to the jury. Then you started down a different track, which is absolutely true. That's not this situation. This situation is someone sitting calmly behind the desk in the middle of the meeting, not somebody out there in a bar or somebody worried about a real riot. Okay? Now, do you want us to draw that line or not? And if you want us to draw that line, how? And if not, how do you deal with Justice Kennedy's hypothetical? So I want to make it clear that the hypothetical is extraordinarily hypothetical because the cases that are brought in the Ninth Circuit now, under the rule we're   in right now, are not going to a jury. And the reason those cases are not going to a jury is two-fold. First, this Court's pleading rules in Twombly and Iqbal will not let those cases get past a motion to dismiss unless there's direct evidence of the officer saying,   but you, I don't like, because you're wearing a Make America Great hat or a Black Lives Matter T-shirt or a Choose Life bumper sticker. There are a couple of cases like that with direct evidence. Those are the ones that survive a motion to dismiss. Second, as this Court said in Malley v. Briggs and has reiterated repeatedly, qualified immunity protects any officer who could legitimately have thought that it was appropriate under these circumstances to arrest. This case, as I say, is far more typical, sadly, of the cases that we've seen. Ginsburg-Miller That would not be the case for this police officer, Aguirre. I mean, he the animus is one person, Wade, the council member, and she tells the officer to make an arrest, but the suit is not against the officer, or if it was, wouldn't the officer have qualified immunity? Yes, Your Honor. The officer here was not a defendant. The only defendant is the city, and as this Court's decision in Owens holds, there is no qualified immunity for a city. Therefore, I'm sorry, did you? Alito No, I didn't want to interrupt your answer. Well, let's take this particular case. Suppose, obviously, there is no love lost between your client and the city of Riviera and he is disruptive and he's arrested. Will he not be able to file a suit for retaliation and get to the jury on that? It might be very difficult for him to get to a jury if the level of disruption is such that under the way this Court has treated plausible pleading in Twombly and Iqbal, it's not plausible to believe that it was the animus that caused the arrest. Do you really think a suit like that could be dismissed under Twombly? I'm seeing the cases from the Ninth Circuit being dismissed all the time on the grounds that it's just not plausible. And if you have a serious crime, it truly isn't plausible to claim that it's animus. So you don't see, for example, any cases where somebody is charged with mayhem and argues successfully. So those are cases that have been brought. What we're worried, obviously, is some kind of rule that will change what has been brought. In the back of my mind, to put sort of every card on the table, is I was thinking of what Justice Ginsburg wrote in a concurrence in Reachley. Do you know that case? Of course. I should have looked it up. I thought it was Reichel. Reichel. I don't know. Sorry. I'm not very good on pronunciation. But in Reichel, Justice Ginsburg wrote a concurrence that I joined that tried to draw separation between cases like yours and the cases that Justice Kennedy and I had been most concerned about, the riot cases, et cetera. Now, what do you think of that? Can I suggest that you look at page 12 of the joint appendix in Reichel? Because there you will see the complaint, which was a pre-Twombly, pre-Iqbal complaint. There are no facts alleged in that complaint, not one from which you could infer that there was animus. And I think Justice Ginsburg's concurrence, which you joined there, is absolutely right. Those officers, under that circumstance, would have been required to stop Mr. Howard's regard. Roberts. Well, if you're telling me to do this, you really think that Twombly and Iqbal require the degree of specificity that you postulated, that the only cases that are going to be successfully brought are when the person has a hat on that says that he's a member of a particular group and the officer says, I don't normally arrest people, but because of your hat with a political message, I'm going to arrest you. Do you really think to me, is it a bit of an exaggeration when you say Twombly and Iqbal are going to keep everything but that case out of court? I'm not saying it will keep everything out. There are two kinds of cases that will go forward. There are the ones where the officer says things like, and these are the cases in the Ninth Circuit that have been allowed to go forward. I normally don't arrest people, but I don't like your attitude, or I normally don't arrest people, but we should have arrested you a long time ago. So there are two kinds of cases that I think will go forward after Twombly and Iqbal. The first are these ones where somebody can plead with specificity something that the officer said or something that the city council member said that has animus. The second are the cases that are going to go forward. Kennedy, just so you know, and it's in line with the Chief's, if you say that the to distinguish between the class of cases Justice Breyer and I were discussing in this case is Twombly and Iqbal, you've lost me. No, I didn't say that. Because Twombly and Iqbal are simply inadequate. I didn't say that. It seems to me to take care of the broad proposition that you began with, and I was curious to know if you have some fallback position so that when there is an allegation, a strong allegation, of a deliberate animus by elected officials, and the police officer is a young police officer who just acts based on their orders, whether or not that is some special kind of case. And you haven't been able to show me that it is. I gave you three answers to that. The first was at the pleading stage. The second is qualified immunity. And this Court has a robust qualified immunity doctrine that will get rid of every case where the officer or the other individual defendant isn't clearly violating the law. If you'll remember this Court's formulation in Malley v. Briggs of qualified immunity, it's all but the willful and the ignorant. And the third thing that gets rid of these cases is the Mount Healthy standard, which is if it is a case where they would have arrested regardless of the animus, that is a case where the defendant will win. If I could return to the second part of what I wanted to say to the Chief. Kagan You said, Ms. Carlin, that this would never apply. You think that in serious crimes, this would never get to a jury. Did I mishear you? Carlin I think that's correct. Kagan Why is that? Carlin Because it would not be plausible to say, unless you had extraordinary evidence of animus, that a police officer would not arrest somebody for rape or burglary or murder, things, serious crimes like that. Kagan Do you think it would be appropriate for us to say something, if we were to rule in your client's favor, that with respect to felonies, this should, we don't expect this to go to juries, much of it all? Carlin Well, certainly that would require reversal in our case. The word felony, as you know, is an extraordinarily broad word, and there may be some crimes that are felonies that the Court would not view as sufficiently serious to justify. But in this case, it would require reversal. Sotomayor But serious crimes. Carlin Serious crimes, yes. I think in serious crimes cases, qualified immunity should take care of every one of those cases, because it's just not plausible to believe that the officer was clearly violating the First Amendment. Roberts Well, we get a lot of cases, particularly from where you've said, the cases you've looked at, where qualified immunity is applied in a case where we found it necessary to reverse. I'm not sure that it's as solidly established a doctrine as you suggest, to protect, to leave. We can allow this action because qualified immunity will take care of the problems. Carlin I think the main thing to focus on here is if you adopt an absolute bar rule, which is the rule that the Eleventh Circuit has, you're not just knocking out closed cases, you're knocking out cases where courts have found that there was a longstanding animus, that there was no justification. And in this case, the city is asking for far more than Hartman, because in Hartman, all he had to show was there was no probable cause for the arrest of prosecution. Here, the city wants us to show not only that there was no probable cause for the only crimes with which my client was ever charged, but there was no probable cause for anything, anywhere in the Florida statutes. And that is an extraordinarily broad rule that says to city council members and says to cities, if I could use a case, Justice Breyer, in which you wrote the opinion last year. In Heffernan, you said it's a First Amendment-protected activity to have a sign on your front lawn. Well, if the police chief there, instead of demoting the deputy, had simply said, wait until he steps off the curb, or wait until he drives 5 miles over the speed limit, arrest him, and make sure it's on a Friday so he can spend the night. And you've got the facts. Of course, your case is quite different from what's worrying me. And what's worrying me, and I think Justice Kennedy, perhaps, and that is, imagine a serious riot situation. They exist. And in that riot situation, where the police have a problem, because there's a sub-gang, and the sub-gang is going around breaking windows and setting fire to things. They can't arrest everybody in the sub-gang. There are too many of them, okay? So it's not going to be true that the Mount Healthy, it would have happened anyway, works, because it doesn't work. It will. Well, it will, because they wouldn't have been arrested. There are six members of the gang and four policemen with affidavits say, we could only arrest four people. Then we have seven more affidavits which say, I saw the look on that policeman's face as soon as we called him a pig, all right? And I am certain that he would never have arrested this person, who, after all, was just lighting a match. He might have had a cigarette. And I'm certain he wouldn't have arrested him, had it not been for the words that he heard, and the policeman had to make a split-second decision, and I don't know. Now, that's the subset that he means, I think, by a bar, okay? So is there some words in this opinion that would favor you, hypothetically, that would wall off that case from decision now? I think the answer is yes. This court can hold that there should be no absolute bar, and that in cases where an officer confronts serious, serious conditions that have to be addressed at the moment, he's entitled to qualified immunity. So I think, Ms. Carlin, the reference in Reichel that Justice Breyer was referring to talks about swift, on-the-spot decisions where the safety of persons is in jeopardy. Is that the sort of language that you think would be appropriate to guard against the kind of hypotheticals that Justice Breyer and Justice Kennedy are talking about? Yes, I think you can say there is no absolute bar, but we understand that when there is a danger to people and when an officer has to make split-second decisions, he's entitled either to judgment on a 12b-6 motion, or he's entitled to qualified immunity, or he's entitled to summary judgment, but that doesn't justify having an absolute bar in all cases. I need some help with what you've said about qualified immunity, because I legitimately don't understand it. I don't think there's ever a situation in which a reasonable officer could think that it is lawful to retaliate based on the exercise of First Amendment rights. So if there is, in a case, a genuine issue about the officer's motivation, I don't see how the officer will ever be able to get dismissal based on qualified immunity. Well, in a case where there is a legitimate dispute over whether the officer acted with retaliatory animus, he will not be able to get qualified immunity. Right. But that's different. So qualified immunity doesn't – well, yeah, qualified immunity won't help in that situation. So it's only the case where you can say there's no genuine dispute on the issue of the officer's motivation. And if there's any evidence, circumstantial evidence, of retaliatory motives, such as the person who's arrested saying something that's insulting to the officer, you're going to be able to infer that. I don't think it's fair to say you'll be able to infer it under those circumstances. That is, I've seen police officers under conditions of stress where somebody says something inappropriate to them, and they don't say anything back, and they arrest the person who's committing a crime. Under those circumstances, I honestly believe that the point this Court makes in Twombly and Iqbal is when the officer's actions and all that the plaintiff can allege are equally consistent with a lawful and an unlawful behavior by the officer, Twombly and Iqbal should require dismissal. And I think if you look at what district court judges in the Ninth Circuit are doing, they are not allowing cases to go forward. If you look – I read all 27 cases that the State of Alaska cites, and in 12 of those cases, I think it's either 10 or 12, the district court dismissed the case either on a 12b-6 motion or on a summary judgment on the grounds that there was not sufficient evidence to go to a jury unretaliatory animus. And in most of the cases, it's important for this Court to understand, in most of the cases that go forward, as in our case, there is a Fourth Amendment claim as well. People are not just bringing the First Amendment claim. Indeed, eight days into the trial in this case, our client was entitled to judgment as a matter of law on his Fourth Amendment probable cause claim and was entitled to go forward on his First Amendment claim as well. And the problem here is that the absolute bar rule takes a lot of cases that are quite like our case. What makes our case extraordinary is you can watch the video and you can read the And if I could just suggest to the Court that it read one example of what the Ninth Circuit is doing now, it's the Beck case, which is cited in Alaska's brief. This is a case that's very similar to the Beck case. Kennedy, incidentally, just a small factor, was the council member that presided at this hearing the same one that had presided at earlier hearings? No. They sort of rotate because different council members might be there or not. She – her animus was expressed at the closed door meeting. She was presiding at this meeting. Well, I'll just say once again, I think you have a very strong case, but you haven't given us anything other than ink, bowl and Plombley and qualified immunity to confine it in any way. No, I think all you have to say here is there is no absolute bar rule. That's all we're asking the Court to do, is to say the Eleventh Circuit's rule is wrong. The Ninth Circuit's rule, which is a workable rule, says probable cause is a relevant factor, and it's going to be in many cases a dispositive factor. But where it's not relevant and where it's not dispositive, a strong First Amendment case should go forward, because otherwise what this Court is really saying is, sure, under Citizens United, make an independent expenditure. Sure, under Heffernan, put a sign on the law. Sure, under McCulloch, demonstrate outside an abortion clinic. But if the government doesn't like that, all they have to do is wait for you to violate any one of the rules that each of us probably violates every day, and they can arrest you and they can hold you for two days and they can strip search you and then they can say to you, have a good day. And if that's what the First Amendment means, then all of the protections that this Court is giving don't mean very much on the ground when you're dealing with local governments. Roberts I was surprised you didn't make more of the fact that the basis for probable cause that the city eventually came up with disturbing the assembly was not one that they, the officer, I don't know exactly where they listed or advanced as their justification, you know, resisting arrest or disorderly conduct. But then I couldn't figure out what to make of it either. It just seemed very odd to me that that was in the case. I think what's going on there is that if you have to show a Fourth Amendment violation in order to show First Amendment violation, we're kind of tied in by Devon Peck, because what this Court said there is you don't need to have probable cause for the offensive arrest in order to defeat a Fourth Amendment claim. Any probable cause. Roberts That's true in the Fourth Amendment context, but would it necessarily hold in the First Amendment context, I believe is the Chief Justice's question. Sure. And you could reverse in this case on the grounds that you're going to apply Hartman as written and not add a kind of Devon Peck chaser to it, if you will. And that would be a rule. Sotomayor Do you recommend that? Roberts I would love that.  In your case. Roberts In our case, we would let that. Sotomayor But is it a good rule? Meaning? Roberts We think the best rule is the rule we advocated for, which is that probable cause is relevant evidence, but not always dispositive. But certainly in our case, if you applied Hartman as written, you would say, well, in Hartman it was the offenses of prosecution. If you show no probable cause on those, they can't come back and say, oh, well, there was mail fraud as well. I mean, it's starting to sound like a rule. Sotomayor If we do away with Devon Peck, though, if I remember here, the sergeant, I think, or whomever, initially looked at the case, said there is grounds for probable cause, but we're not going to get a conviction, so that's why we're not going to proceed. Now, the judge said there's no probable cause on the facts as they existed, but you can well imagine that officers filled with animus could scour the books at the booking station, and they could look for something that might fit the day as well, but still not have been something they would have otherwise arrested for. Sure. Which is why we think the best rule is that probable cause is relevant but not dispositive. If I may reserve the remainder of my time. Thank you, counsel. Mr. Jurefsky. Mr. Chief Justice, and may it please the Court. During Ms. Carlin's argument, I wrote down four potential backstops to address the hypothetical that Justice Kennedy raised and that Justice Breyer echoed about a police officer dealing with a riot in a bar. I'd like to explain why none of the four that I wrote down are sufficient and why the longstanding common law rule and the rule in Hartman ought to be the one that applies here. The four that I wrote down were pleading standards, qualified immunity, Mount Healthy, and a distinction between felonies or major crimes and other crimes. First, with respect to the pleading standards, it's critical to understand that police officers must concededly take account of speech when deciding whether to arrest in many situations. The bar example is one of those. And police officers need to have an objective basis on which their conduct will be judged. It is virtually impossible for police officers themselves in the bar kind of situation to disaggregate their own thought processes and understand whether – and recreate after the fact, certainly – whether they carried out an arrest because of the content of somebody's speech and their dislike for it or because the content of somebody's The problem with a pleading standard rule, as the Ninth Circuit demonstrates, is that there are many cases in which police officers and arrestees simply have a different view of what happened. And the Ninth Circuit sends those cases to juries, and regularly the jury is ultimately fined for the police officers, but only after they've been forced to endure all of the burdens of litigation. Kagan. Kagan. I can give you an opportunity to address each of your four if you want, but if I may say, I mean, Ms. Carlin was having some difficulty with hypotheticals, but you might have some difficulty with the facts of your case. So if I could move you to the facts of your case and suggest the kind of dangers that it poses, which is that in a local government, there are people who become real sort of pains to local officials, and local officials want to retaliate against them for all the various things they say, charging corruption, doing whatever Mr. Lozman did. I'm sure that there's one in every town. And just the nature of our lives and the nature of our criminal statute books, there's a lot to be arrested for. So you follow somebody around and they commit a traffic violation of a pretty minor kind, and all of a sudden you're sitting in jail for 48 hours before they decide to release you. So that's a pretty big problem, it seems to me, and it's right here in kind of the facts of this case. So I guess I'd like you to respond to that. Justice Kagan, let me respond to that first in terms of the facts of this case and then more generally about the legal rule that ought to be drawn here. A couple of critical things about the facts of this case. One, Officer Aguirre testified that he made the independent decision to arrest Mr. Lozman and that he had never heard of Mr. Lozman before the incident at which this arrest took place. Second, the ---- Ginsburg Wasn't he told to arrest? Didn't Wade say, call the officer? Counselperson Wade said call the officer, but Officer Aguirre made the decision to arrest. Just because somebody calls the police doesn't mean that the police will actually act on that, especially where here the testimony was that Officer Aguirre made the independent decision and had to make the independent decision. He could not. Kennedy Let's assume this officer has qualified immunity and that perhaps he didn't even violate the law anyway. What about the city council? So the city council, first, we could discuss the transcript. The transcript that Ms. Carlin relies on does not support the notion of a scheme to get at Mr. Lozman. There was one comment by one city council person expressing frustration, followed by five or six pages of transcript testimony in which the city council members agreed to put all of the resources they needed into the litigation and to defeat the litigation. That is what they agreed to do. Roberts You're talking about the closed meeting? Kennedy Correct. And if in fact there were some sort of a plan to get at Mr. Lozman, why would the city council have let him speak uninterrupted many times, both before and after the particular incident that was issued here? And why would the jury have found in the city's favor not only on this claim, but also on the other forms of retaliation that Mr. Lozman alleged? So on the facts of this case, first of all, I dispute Ms. Carlin's characterization of them. Second, and more importantly, the Court, as in Hartman, should not make a general rule for the facts of this case. As the Court Roberts Well, regardless of what happened before or after, I found the video pretty chilling. I mean, the fellow was up there for about 15 seconds, and the next thing he knows, he's being let off in handcuffs, speaking in a very calm voice the whole time. Now, the council may not have liked what he was talking about, but that doesn't mean they get to cuff him and lead him out. Well, there was probable cause in that situation to arrest him for unlawful disturbance. He repeatedly failed to heed Ms. Wade's and Officer Aguirre's directions to stay on topic. There was a finding by the district court here that comments He was on topic. Assume that fact. He started by saying there's been an arrest for corruption, which was true, and then he tried to say, and I've been telling you that other people are corrupt. Why is that off topic? Because the corruption that he alleged related to Palm Beach County corruption, and as the district court found, the topics to be addressed at these meetings had to relate to topics related to the city, not related to the county. The city is within the county. The city is within the county, but that is the line that the policy drew. It's a city council meeting to talk about city business and city officials, not county officials. The more fundamental point here, though, is that as in Hartman, the Court in footnote 10 in Hartman put it rather colorfully, you don't design a retirement system because you might win the lottery, which is to say you don't design the general rule for the extremely rare one-off case, particularly there. Sotomayor, Hartman turned very much on the prosecutor and the assurance that the prosecutor is going to be a check against, you know, you had the postal inspectors, but it was the prosecutor who made the decision to prosecute. And here, there's no one like the prosecutor, who has absolute immunity and is a person that we generally think of as upright. And here, there's nothing like that. The arrest, at least it looked like from the tape, was motivated by Wade, who was just very annoyed at Mr. Lozman. Justice Ginsburg, I respectfully disagree with that characterization of Hartman. In Hartman, the Court said that the prosecutorial immunity was an added reason for the rule that the Court adopted. But the heart of the Court's analysis in Hartman was about causation. It was about the complex causation problems that arose in that case because you had multiple actors. You had the police officer who allegedly induced the prosecutor to act. Here, you have at least as significant a causation problem because of the ways in which police officers concededly must account for speech in an arrest. And police officers should not be deterred from making legitimate arrests, whether for major crimes or for minor crimes, out of fear that later on, there will be an allegation that perhaps the real reason for the arrest was the black lab coat or the shirt. Sotomayor, we don't disagree that police officers shouldn't be arresting for retaliatory intent. Correct. Now, if we accept that premise, that the First Amendment is valuable enough to us to protect it from government abuse, and the facts in this case, that's what they assume or that's what we're assuming from the facts as alleged, shouldn't we have a remedy? And shouldn't we have a remedy that takes care of those arrests that are motivated solely because of animus, because Mount Healthy says if you would have arrested anyway, you're not liable. But what you're doing is depriving people who would not have been arrested except for their First Amendment speech from having any remedy whatsoever. Justice Sotomayor. Yeah, I know you say something else will take care of it, but the reality is something else usually doesn't take care of it. So, Justice Sotomayor, I think the premise of your question is that there is an epidemic of retaliatory arrests out in the world. No, I'm not even talking about an epidemic. I'm talking about the constitutional wrong, because either way, you're saying we shouldn't create a system for this kind of violation, but why should I create a system to exempt this from our regular First Amendment process, because there might be one or a few cases that fall through the protective barriers that Ms. Catlin pointed to? First, because there is no workable system to carve off just this case from the mine run bar incident case. Second, because there are other remedies besides damages, actions in individual cases. And third, because having surveyed the limit. Kennedy, if that is so, then the First Amendment is in trouble. In this case, it seems to me, you might argue with the evidence, but there is evidence that there was a predetermined plan to arrest somebody on account of his political speech in a political form. And it seems to me that that is a very serious First Amendment problem. And it seems to me you can cabin that off somehow from the Bar Institute. Petitioners didn't give us any specific way to do that other than Twombly, but it seems to me that the Court, in order to protect speech in the political form, can make that distinction, at least in this case, maybe wait for other cases to see if it should be expanded. Justice Kennedy, as in Hartman, the Court said it was not possible to create a workable system that would cabin off a particular kind of speech or a particular kind of violation. I don't believe there is here either. If you look at the instances that in the Ninth Circuit have gone to trial, many of those involve political speech as well. Consider, for example, the Ballantyne case cited in our brief. That was the case where protesters were repeatedly chalking the sidewalk with anti-police messages, messages, a form of political speech. The police repeatedly tried to work with them and to suggest, instead of chalking, use this other form of protest. Roberts Counsel, why doesn't it account for your concerns with the Chief Justice suggested, which is perhaps probable cause to arrest for the charge made would tend to defeat an inference of retaliation, but to imagine probable cause for an offense ginned up years later at trial after scouring the books and the judge sending everyone to do more homework to find more statutes and more books, why might that not be different and that raise an inference of retaliation? Because, Justice Gorsuch, of the teaching of Devenpeck, that the Fourth Amendment context, you were trying to secure First Amendment values, and why isn't it a different consideration? It is in the Fourth Amendment, but the core teaching of it is that police officers are not lawyers. What they are trained to do is to identify a course of conduct and determine whether there is probable cause that some unlawful – that some law was broken during that time. But they are not trained and they are not required to specifically identify at the time of the arrest precisely what section of the code was violated. And I'm not suggesting that the failure to get it right would itself invite liability, but why wouldn't it at least raise the possible inference of retaliation there in a way that it wouldn't if it got it right before the arresting charge? Again, because police officers simply are not trained to think in that particular mindset. If a police officer sees me have a car accident and determines that I am at fault for it, the police officer is not required at that moment to be thinking of – Well, fair enough, you didn't get it at the moment, and maybe you give them a couple of chances even at the apple. But do you wait until trial and in the middle of trial and sending lawyers to do homework to find more charges? Does that – is that different in any meaningful way? Justice Gorsuch, the only reason that this was all determined at trial is that Mr. Lozman, before trial, did not serve us with interrogatories and ask us specifically what offenses we were claiming probable cause for. He could have done that – Well, if that doesn't – if that doesn't work, what you started out, and I wanted to hear your answer, and this is just one add to the mix, but the mix, it seems to me, consists for the Barr and Riott cases, et cetera. One, they say start with the Mount Healthy framework. Two, you have Iqbal. Three, you have qualified immunity. Justice Gorsuch added what he just said to that. And I would add, and the officer – it's a special situation which either we don't reach or it's okay or you use the Fourth Amendment or whatever, where the officer must make singularly swift, on-the-spot decisions and the safety of persons or property is at issue. Okay? Now, suppose – I don't see anything too terrible about writing those. And what harm would be done? You would, of course, lose your case, which I consider perhaps you would consider a serious harm. But nonetheless, what harm would happen to the interests that you've heard articulated? The harm that would happen is that this Court has repeatedly recognized that police officers need objective bright-line rules, not five or six or seven-factor tests that they then need to – Breyer. I didn't mean it as a five or six or seven-factor test. What I really meant you to focus on was the last one, because I've heard discussion on the others, and that is the police officer does have the immunity that they search in the situation where – and I could repeat it, but maybe you wrote it down. But it's that – well, I'll repeat it if you want. Where there is a singular need for a swift, on-the-spot decision and it involves the safety of persons or property. Justice Breyer, the Ninth Circuit has tried to apply exactly that approach. Those cases go to trial, and those cases are found in favor of the police officer. Nor does qualified immunity, which I think you also suggested, do any work here if Mr. Lozman's rule were to prevail.  As I did go through the list that the Alaska brief formed and the six that you listed, it seems to me that having read those cases, that they went to trial not because those limitations failed, but because there was other evidence of things that didn't fail but made this triable cases. Many of them involved excessive force claims, which can often be reflective of animus in a different way than a mere arrest is. And as was pointed out by your adversary, of the 26 the Alaska brief pointed to, 12 of them were dismissed at the motion-to-dismiss stage. So people bring things, but it doesn't mean that they're viable. Sometimes they are and sometimes they're not. Far too often they are viable through trial, and only at that point does a jury find in favor of the officers. And in many of these cases, the basis for finding a triable question was simply that the police officer was aware of the content of some speech, and that was enough in order to create an inference that maybe the real reason for the arrest was not that the arrestee. Sotomayor, we have a difference of opinion, and perhaps I don't think I have to recite each, go through each case, but I don't think that was merely the reason in most, if not all of them. I think if you look at cases like Holland or the Chalking case or Mihailovici, those are cases where the reason that there was a triable question was simply a difference of opinion about what happened, and that is also precisely why qualified immunity will not do any work to protect police officers if Mr. Lozman's rule becomes the law. At that point, in the typical case, the only thing left to be tried if there is an allegation of a retaliatory motive is what was the real motive in the officer's head. That's not something to which qualified immunity attaches. That is going to be a fact question for a jury. With respect to the suggestion that Justice Kagan raised earlier between major and what's a significant enough crime to arrest for and what's not, and moreover, even some seemingly minor crimes, as the amicus brief of the District of Columbia and numerous States points out, even some seemingly minor crimes can be very important to enforce for community policing concerns. And so the idea of having a test where only major crimes, the police officer somehow gets more deference than for minor crimes, doesn't work in practice. I'd also like to point out that Mr. Lozman and his amici have surveyed decades of cases. They have not come up with a single case, not even one, in which a police officer has been held liable for a retaliatory arrest that was supported by probable cause. Ginsburg. I'm confused by your keep talking about the police officer. As far as I know, no one charged the police officer here with having any kind of animus against Lozman. The charge was that the city council did, and particularly this council member Wade. The animus here was on the part of the city council, not the arresting officer. If I may briefly respond, the alleged animus was on the part of the city council, but in order to have a complete violation, it would need to be carried out by the officer which requires an inquiry into the officer's state of mind and the officer's intent. Moreover, there is no basis for distinguishing cases against police officers versus those against municipalities in either the text of 1983 or the history of these sorts of actions. Thank you, counsel. General Wall. Mr. Chief Justice, and may it please the court, I have three points. The latter two are about law, and I hope I'll get to them, but I want to start with what the world looks like because I think there's a serious disagreement here, and this case arises on about the worst possible facts, and I would hate to see that drive the rule. There are about 10 to 11 million arrests every year in the country. Of those, Petitioner and Hisamiki have come forward with 20 cases in their briefs, and I'd encourage the court to look at them because I'm perfectly happy to rise or fall by them. They divide down, I think, into three basic buckets, protest cases, noise ordinance cases, and other cases where there's a confrontation between the arrestee and the officer, and there's a failure to follow a lawful order, and the question is what motivated the arrest, the failure to follow the order or the speech? And I think what we're trying, what the United States would submit is Twombly and Iqbal are not going to work for the reasons they haven't worked in the lower courts. The plaintiffs never just point to their speech. They always point to other things about the interaction with the officer, and many courts have deemed that sufficient to get past the pleading stage. Qualified immunity isn't going to work for the reasons Justice Alito gave. I don't think the language in Reichel is going to work because that was designed for protective details. These are all on-the-spot decisions, even the officer's decision in the city council here, and a lot of these cases don't involve the safety of persons or property. I mean, take a case like Galarnik that went all the way to the Eighth Circuit. Somebody trespassed into a government trailer in order to criticize the government, and the question is, no question he was trespassing. Did they arrest him for that, or because once he got inside the trailer, he was criticizing people working in the trailer? I don't know that you could say that there was a real safety concern there, and there's no property concern in any of the noise ordinance cases or even a lot of the protest cases. I'd really caution the Court away from addressing the Devon Peck rule here. Petitioner hasn't challenged it. It's a very difficult question. It's a very different question from whether you need to show an absence of probable cause, what offenses you should have to show that for. I think there are very good reasons why the rationale of Devon Peck should apply here regardless. So then I think you're really just down to what Justice Kennedy was getting at, which is, look, this looks like an official policy of the municipality, and indeed the parties seem to agree that's what the jury found. And I think you could rest it on that, although for the reasons that the city's counsel gave, there's no textual or historical support for that in the statute or common law. And I think Hartman's footnote 10 already says, we design the constitutional tort for the minor run of cases, not for the needle in the haystack. And this case really is. I mean, it really – I agree that the facts here are troubling. I also just think that this is almost a category of one. It just does not look like the typical cases for which you design the constitutional tort rule, and that's what Hartman tells us. Kagans So Mr. Wall, we allow people to sue under 1983 for discriminatory arrests under the Equal Protection Clause, and without showing anything about whether probable cause exists or not. What has been the experience with respect to those cases, and why is this area – why should the rule be any different than that one? Wall expand I think what we'd say is, different for a couple of reasons, but one similarity, and this is one of the legal points I wanted to make. Those cases are about race, race the Court has said is so rarely a proper consideration for officers, that the Court does treat them differently. Speech is the kind of thing that officers often can and must in these situations take account of, and even there, even though it's more subjective than in virtually every other context, even there you've got the objective screen of Armstrong, so you've still got to prove that similarly situated people were treated differently. And I think, setting aside the facts of this case, the legal anomaly that Petitioner wants is to say, look, for every other constitutional tort claim, retaliatory prosecution claims under the First Amendment, selective enforcement under the Fourteenth, or false arrest under the Fourth, you've got some objective screen, whether it's the absence of probable cause, whether it's Armstrong's similarly situated requirement. And what they're really saying is for this subcategory of claims under the First Amendment, no objective screen. Fact question, it's going to go to the jury, and all of these cases are virtually a he said, she said. The officer wasn't going to arrest me until I called him names and I said really ugly things. And the officer said, no, I was going to arrest them for failing to follow my lawful order. Roberts. One of the grounds, and I don't – I'm not quite sure how you could use it. We've been talking about how bad the facts are and yet how difficult it is to apply. This is not a situation where the police are out in the street and something's happened and they're looking at the – you know, what kind of slogans they have, what they're shouting, a lot's going on. This is, you know, in the city council, during a time specifically set aside for citizens to talk about whatever the council's talking about and comment on it. Is there any basis there for limiting it to the, it seems to me, intensely free speech environment that we're talking about? So maybe right there at the tail end, Mr. Chief Justice, I mean, I understand the impulse. I think the difficulty with the on-the-spot language is that even here the officer is making an on-the-spot decision. You could try to limit that to – I don't know that in the field would capture it, because I'm not sure there's a difference between – I'm not sure how the court would get into what's in the field and what's not, whether you're in the field when you're in the government trailer or when you're out on the streets but you're not in the city council meeting. You could try to tie it to the nature of the city council meeting, the fact that you both had the official policy and that it was in the context of a meeting where people were designed to air grievances or talk about what they wanted against a city. Again, I don't think that's got much textual historical support behind it. And Hartman specifically said, look, we're not going to design this thing for the one-in-a-thousand case. And I think even more important here, because it's so much easier to allege retaliatory arrests and there are so many more arrests every year. Breyer. Did you say that? Not on the spot. And you also say here they're suing a person who is not a policeman. And so they have to show the causal connection. So the causal connection is, again, as Justice Ginsburg said and I said in Reichel, is significant. No, I don't think that's true. And therefore, since you have to show the causal connection between this decision and the other person who is the policeman, it doesn't really affect the policeman. Oh, Justice Breyer, if the Court designs a rule in such a way that it recognizes this is the one-in-a-thousand and it wants to pick up that one, though not the others, it's not what the Court did in Hartman, but I suppose it could do it here. I think the easier way to analyze it is to say, look, and Petitioner doesn't dispute that this is the basic question at page 9 of the reply, are claims of retaliatory arrests more like claims of retaliatory prosecution under Hartman or more like claims of retaliation by employees and government contractors under Mt. Healthy? And I think what you'd say is, look, arrest and prosecution are closely related steps in the criminal process. They involve the same body of valuable probable cause evidence. They both got a very hard one. Kagan, the one reason they are different is because in Hartman you had an indictment and you just looked at the indictment and said, is there probable cause for that or not? I mean, here we have this ridiculous spectacle of going through the statute books for a month, trying to find something that this man may have violated. There's just got to be a big difference between those two inquiries. Look, I completely agree. Again, it's difficult and we, Petitioner hasn't challenged Devenpeck here, so we haven't had the opportunity to brief it and we would very much like to do so, because I think it's too easy to just say discard the Devenpeck rule, because what the court said in Devenpeck is, look, police arrest on the basis of a course of conduct. You're waving a gun in the air and they arrest you. They don't know exactly which provision of the criminal code that violates. They go back, they talk to their supervisor, they may have an exchange with prosecutors, they may go before a grand jury. It's very difficult to isolate the exact point in that analysis where you should freeze frame it and say what were the offenses for which there was probable cause. I agree that here you've got an orderly way to trial. Roberts. How about before trial? So I think Justice Gorsuch, I think a before trial rule would be perfectly fine. Again, as long as – because I think it reflects the realities of policing, which is that police aren't lawyers. They arrest based on conduct. And all the same reasons the Court applied the Devenpeck rule are exactly why the common law, I think on the best reading, had the Devenpeck rule, too. And it wasn't like the common law didn't know about speech. The restatement recognized it. You may be pulled over for speeding even though you think it's because you've complained about the department. The common law took all of these things into account, too. And in its wisdom, I don't think it created an epidemic that requires a drastic cure that searches for the needle in the haystack. This is the rule in the majority of circuits. And what's notable is that unlike in a lot of these cases, it's not as if Petitioner and Izemiki have come in saying there is some huge problem in the second, fourth, fifth, eighth and eleventh circuits. They really have sort of pointed to the facts of their case, and I agree it's troubling, but in the real world, I think the far more serious danger is subjecting police departments across the country to claims that are easy to allege and difficult to disprove. And weighing virtually that exact same balance in Hartman, what the Court said is the game is not worth the candle. We're not going to try to design the constitutional tort for the one in a thousand case. There are other remedies that get at that. Kagan. Well, you keep on saying one in a thousand, but might there not be a problem that now that we have this case and we have to decide this case, and if we decide it your way, you know, maybe it's a green light to everybody to make it not the one in a thousand case, and to start really going, you know, there are lots of small towns in America, and there are lots of cranks in those small towns, and there are lots of relationships that go sour between officials and some members of the populace. And, you know, what about that? What about, you know, finding that guy every time he doesn't quite stop when he makes a right on red and putting them in jail for a while? So a couple of things. One, again, I don't think we ought to believe that the only bulwark against backsliding on the First Amendment is damages suits, but more importantly, what I'd say is if that's the kind of rule they want you to put in place, they ought to have to show that the common law, which had this rule for hundreds of years, was a problem. They ought to have to show you that Hartman has created an epidemic of retaliatory prosecutions. They ought to at least have to show there are more retaliatory arrests in the Second, Fourth, Fifth, Eighth, and Eleventh Circuits than the Ninth and Tenth. And they haven't tried to do it, because what they'll find, if you look through those cases, is there are a lot of claims in those circuits, but they don't turn out to have a lot of merit. They're difficult to defend against, and that's why we think the rule makes sense. Roberts. Thank you, counsel. Four minutes, Ms. Carlin. Thank you. I'd just like to begin with the common law and ask this Court to read its own decision in Dinsman, which is the only decision by this Court talking about probable cause and false arrest that antedates the passage of Section 1983. And here's what the Court says on page 402. Probable cause or not is of no further importance than as evidence to be weighed by the jury in connection with all the other evidence. That's the rule we're asking for. We're asking for the common law rule here. And if you look at Prosser on torts, he says people keep getting mistaken between malicious prosecution, which has always had a no probable cause requirement, and false imprisonment, of which false arrest is a subset, which has never had that requirement at common law as part of the plaintiff's case-in-chief. The second point I'd like to make is a point that goes back to the Devon Peck issue, which, as Justice Gorsuch pointed out, might be perfectly sensible in the Fourth Amendment context. But not when you're talking about First Amendment values, because First Amendment values are the core of the First Amendment is an anti-retaliation principle. And do not be do not be fooled if you tell city councils that if they deny somebody a permit, they can be sued for damages. If they fire him from his job, they can be sued for damages. If they don't give him a zoning variance, they can be sued for damages. If they don't give him a parade permit, they can be sued for damages. But if they arrest him and they can come up with anything, even 8 years after the fact, that might be something for which there's probable cause, not even showing that he actually committed the offense of disrupting a religious assembly or assembly for other purposes, but just that an officer could believe probable cause. You are giving a green light to every vengeful city council in America to go after people when they demonstrate against abortion clinics, when they demonstrate about police, when they protest zoning decisions. The First Amendment really requires that there be some remedy, and the text of Section 1983 gives that remedy. It says when somebody subjects or causes to be subjected to a violation. And that makes it clear that Section 1983 contemplates cases like this one in which a city council caused someone to be arrested. All we ask is that this Court hold that probable cause is not an absolute bar in cases where retaliation is proven. Thank you. Roberts. Thank you, counsel. The case is submitted.